UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRANDON K. BUCHANAN,<br><br>Plaintiff,<br><br>vs.<br><br>CHRISTOPHER M. DANNEN,<br><br>Defendant. | CASE NO. 21 Civ. 2319 (PAE)<br><br>**AFFIDAVIT OF CHRISTOPHER M. DANNEN IN RESPONSE TO PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

I, Christopher M. Dannen, attest and declare as follows, under penalty of perjury:

1. I am the defendant in this matter and attest and declare the following facts upon my own personal knowledge.

2. I am the Chief Investment Officer ("CIO") and managing partner of Iterative Capital Management, L.P. ("ICM"), a company that has as its limited partners various cryptocurrency investment funds, and director of an associated trading desk, Iterative OTC, LLC ("Iterative OTC").

3. I am also the general partner of Iterative Instinct UGP, LLC ("Iterative Instinct"), the controlling entity of ICM and Iterative OTC.

4. I along with Brandon K. Buchanan, the plaintiff in this case, own equal membership interests in Iterative Instinct.

5. Collectively, I will refer to ICM, Iterative Instinct, Iterative OTC, and the investment funds as the "Iterative Entities."

**Plaintiff's Access**

6. Currently, Plaintiff has full access to (and in some cases administrator control of) all bank accounts, payroll systems, Google Drives, and other repositories of Iterative Entities data and/or funds.

7. Plaintiff has equal access to his past Iterative Entities emails as do I. Plaintiff can also request to forward current incoming Iterative Entities emails to his personal account. In fact, only Plaintiff's ability to send email using his Iterative Entities email address has been restricted.

8. As recently as March 2021, Plaintiff and I have corresponded regarding the form of potential communications to investors. I have found emails evidencing these communications from as recently as March 5, 2021.

9. The Iterative Entities control a variety of bearer assets in the form of cryptocurrency. Because cryptocurrency is a bearer asset that requires possession of a physical key to gain access to it, only one individual may have access to those assets at any one time. For those assets, I have provided to Plaintiff evidence of all balances. I have also offered to transfer custody of those assets to Plaintiff as recently as February 2021, though Plaintiff has refused my requests.

**Restrictions on Plaintiff's Email Access**

10. I restricted Plaintiff's ability to send emails from his iterative.capital email address for a variety of reasons.

11. First immediately prior to the lockout, in early December 2020, Plaintiff exhibited odd behavior in chats and emails that created the appearance that he had been hacked.

12. My suspicions regarding Plaintiff's account being hacked were not without precedent. Approximately six months before, Plaintiff's phone was in fact hacked and he was impersonated, causing a 15 Bitcoin ("BTC") client loss. Plaintiff was also hacked during a $3.25M loss he incurred for the Iterative Entities in 2018. Access to Plaintiff's email by an unauthorized person could cause great harm to Iterative Entities, its investors, and me personally, because his email contained my personal details including my home address. In short, Plaintiff's email was locked down temporarily in an effort to protect the Iterative Entities and their investors.

13. Plaintiff's ability to send outgoing email remains restricted because Plaintiff has unilaterally used his Iterative Entities email address to spend approximately $1.01 million on law firms and related service providers in the third and fourth quarters of 2020 alone.

14. The work that Plaintiff unilaterally outsourced to outside law firms at a time of great financial distress for Iterative Instinct was primarily his responsibility to handle as a licensed attorney with experience in fund formation, administration, and investment management.

15. To afford the exorbitant legal fees he incurred for Iterative Instinct, Plaintiff borrowed money between the various Iterative Entities to fund what amounted to an effort to outsource his job.

16. Since locking Brandon out of his outgoing email account, and thereby his ability to unilaterally bind the Iterative Entities, the companies' costs have plummeted and their financial picture has started to improve.

17. More concerningly, Plaintiff owed over $120,000 to the Iterative Entities on his personal trading account and used the company debit cards on his vacations without reimbursement.

18. Brandon also supervised employees who traded Iterative Entities assets for their own benefit while leaving the Iterative Entities holding the bag on substantial losses, all while entering fraudulent data into the company's trade log to hide their activity.

19. Upon learning of all of Plaintiff's concerning conduct as detailed above, I informed the Iterative Entities' primary investors, one of which is conducting an audit. I also hired the law firm Wiggin and Dana LLP, with Plaintiff's begrudging consent, to investigate the misconduct and respond to investor concerns.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge, information, and belief.

Dated: March 2, 2021

Christopher M. Dannen