UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRANDON K. BUCHANAN,<br><br>                Plaintiff,<br><br>    -v-<br><br>CHRISTOPHER M. DANNEN,<br><br>               Defendant. | CASE NO. 1:21-CV-2319<br><br>**AFFIDAVIT OF BRANDON BUCHANAN IN RESPONSE TO DEFENDANT'S RESPONSE TO PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER** |

    I, Brandon K. Buchanan, under penalty of perjury under the law of the United States of America, hereby declare as follows is true and correct, and submit the same by way of response to the factual averments of Defendant Christopher Dannen's March 22, 2021 Affidavit.

1) I re-allege and repeat my previous affidavit in its entirety, and affirm the following facts based upon my own personal knowledge.

**Titles and Responsibilities**

2) Defendant is the Co-Chief Executive Officer (along with the Plaintiff) and Chief Investment Officer of Iterative Capital Management, L.P. ("ICM"). Defendant is not a "managing member" of ICM—indeed, there is no such role within ICM—but rather a Limited Partner (along with the myself).

3) The Defendant is not the "general partner" of Iterative Instinct UGP, LLC ("Iterative Instinct")—indeed, there is no such role within Iterative Instinct—but rather a Member (along with myself).

4) Indeed, I agree with Defendant that the parties are equal in every respect with respect to the businesses, whether it be share of profits, authority or otherwise.

### **Plaintiff's Access**

5) Contrary to Defendant's assertion, I do not have full access to my Iterative email, Iterative bank accounts, Iterative payroll systems, Iterative Google Drives, and other repositories of Iterative Entities data and/or funds. If I had such access, I would not be incurring the time and expense associated with the instant motion.

6) I, however, agree that my ability to send email has been restricted and reiterate that my ability to access email is similarly blocked.

7) Indeed, my business email was disabled on December 13, 2020 and has not been restored since. My email is connected to various accounts, including: (i) TriNet (the payroll system), (ii) Google Drive (company documents, presentations, and financials), (iii) AirTable (a repository for cryptocurrency exchange accounts and cryptocurrency wallets) and other business accounts. Having the email address disabled and/or access withheld from me is tantamount to restricting me from access to company information as two-factor authentication and other verification measures require such email access in order to access the associated business accounts.

8) Further, by no longer having access to my business email, I no longer receive emails directed to the partnership's general email address partners@iterative.capital, which itself is connected to various cryptocurrency exchange accounts and to which many inbound and outbound communications to third parties occurs.

9) In disabling and/or restricting my email, Defendant has allowed the payroll system, TriNet, to lapse and jeopardized relationships with third parties that have attempted to contact me for

business purposes but have received no response. Defendant also did not forward to me any emails that were directed to me via my work email address (brandon@iterative.capital) or the partnership's email address (partners@iterative.capital).

10) I do not have actual access to past business emails as Defendant suggests. Rather, I have limited access to old emails that have been saved locally on my personal computer. Many of these emails are without their attachments. What is more, I have been made aware, through company counsel, that emails created prior to June 2020 (along with their attachments) have been deleted, as a result of Defendant disabling my email address.

11) Proving that my exclusion from the business presents an ongoing, irreparable harm, Defendant has in fact required my assistance in connection with an outside audit, necessary investor communications, and upcoming distribution models, among other business operations. Specifically, Defendant has asked me to help draft and review documents but has maintained his objection to allowing me meaningful real-time access.

12) It is not true that only one member can have visibility into the Company's cryptocurrency wallets and cryptocurrency exchange accounts at any one time. All that I require for such visibility are the "seed phrases" in order to have access to the various wallets, and the associated passwords in order to transmit any of those assets. Defendant has provided neither. In fact, the Defendant has refused to provide even the addresses for the various cryptocurrency wallets that I have requested. The same is true for cryptocurrency exchange accounts, where access is provided with a username and password, followed by a two-factor authentication code that is either sent to a device (e.g., phone) or email (e.g., partners@iterative.capital).

### Restrictions on Plaintiff's Email Access

13) Defendant's rationale for restricting my email is pretextual. At no point in December 2020 did Defendant question me on whether my phone or email was compromised, and at no point in December 2020 was my phone or email actually so compromised.

14) The "hack" referenced in Paragraph 12 refers to a "sim-swap hack" that occurred to my cell phone. This hack was in no way my fault, had no effect on my business email, and caused no direct client losses as it was ultimately the impersonation of Defendant and a third-party trader that caused the client loss. Moreover, upon learning of the hack, I sprung into immediate action, alerting the team, sending an email to clients and hiring a third-party firm to investigate.

15) "Sim-swap" hacks are unfortunately common in the cryptocurrency community due to the digital nature of the business and assets at issue. Indeed, I was previously sim-swap hacked in 2018. But that 2018 hack was unrelated to the $3.25M theft referenced in Paragraph 12 of Defendant's Affidavit, which actually took place during a transaction overseen by Defendant, among other individuals. This matter has been prosecuted by the DOJ and resulted in a restitution order against the perpetrator. A true and correct copy of this restitution order is attached hereto as Exhibit A. At no point was my business email compromised during this exploit.

16) At no point in time has my business email been hacked or exploited, as a two-factor authentication is required to access the email address. The email has now been locked since December 13, 2020 despite repeated requests by me, personally and through personal counsel, and through outside company counsel.

17) Defendant's remark about me using my email address to spend approximately $1.01M on law firms and related service providers is disingenuous. Defendant was copied on most emails with outside counsel and was always fully aware of substantial and ongoing regulatory, corporate,

and litigation issues confronting the business that required outside counsel. The bulk of the fees that Plaintiff alleges are in connection with litigation with an investor and were incurred between April to December of 2020. *See KDH Consulting Group LLC v. Iterative Capital Management L.P. et al.*, 1:20-cv-03274-VM (S.D.N.Y.). The remainder of the invoices date as far back as 2018. Defendant, without objection, disbursed such payments.

18) These legal services were necessary for business operations and were not objected to as they were incurred. To the extent Defendant avers that the Iterative Funds are facing "financial distress," such would be due to Defendant's negligence and mismanagement as a manager.

19) Defendant has never inquired to me about the nature of the alleged debit card expense, which amounts to $1,175.31, and is a fraction of the amount owed to me in the form of expense reimbursement by the Company.

20) Defendant's remark about my role in supervising employee trading and data entry are false. Defendant, himself, traded frequently on his own personal account. Moreover, given Defendant's access and control of the database, he was the *de facto* supervisor of every trade that occurred on behalf of the business.

21) In March 2020, I acquiesced to Defendant's request that I close a particular cryptocurrency position at the peak of the market's decay due to the impact of coronavirus and the spiraling market uncertainty at the time. This resulted in a personal loss of approximately $120,000, which I acknowledge remains owed to the trading desk.

22) Notwithstanding the foregoing, I am owed deferred compensation of approximately $70,000, as I have not been compensated for my work since December 1, 2020.

23) The audit referenced in Paragraph 19 of Defendant's Affidavit is a direct result of my whistleblowing about Defendant's gross misappropriation of assets. As Defendant states,

Wiggin and Dana LLP has been retained to help respond to that audit, and I have fully assisted in that audit, despite being largely locked out of the Iterative accounts.

24) Indeed, David Ring, Iterative's attorney from Wiggin and Dana LLP, agreed in his audit responses to include the following disclaimer regarding the responses: "These responses reflect Brandon Buchanan's best understanding based on the information available to him at this time. Mr. Buchanan has had limited access to Iterative emails and documents since December 2020, when Christopher Dannen largely shut off his access to those accounts."

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge, information and belief.

Dated: Miami, Florida

March 24, 2021

Brandon K. Buchanan

Sworn to before me this 24 day of March, 2021.

_____
Notary Public

Maria Victoria Diaz
NOTARY PUBLIC
STATE OF FLORIDA
Comm# GG926975
Expires 10/28/2023